FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JENNIFER P.,[1]

        Plaintiff,

v.

ANDREW M. SAUL, the Commissioner of Social Security,[2]

        Defendant.

No. 4:19-CV-5020-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[3] Plaintiff Jennifer P. appeals a denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ improperly 1) weighed the medical opinions; 2)

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant. *See* Fed. R. Civ. P. 25(d).

[3] ECF Nos. 12 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

determined that the impairments did not meet or equal a listed impairment; 3) discounted Plaintiff's symptom reports; and 4) conducted the step-five analysis. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 12, and denies Defendant's Motion for Summary Judgment, ECF No. 13.

## I. Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[4] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[5] If the claimant is engaged in substantial gainful activity, benefits are denied.[6] If not, the disability-evaluation proceeds to step two.[7]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[4] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[5] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] *Id.* §§ 404.1520(b), 416.920(b).

or mental ability to do basic work activities.[8] If the claimant does not, benefits are denied.[9] If the claimant does, the disability-evaluation proceeds to step three.[10]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[11] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[12] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[13] If the claimant is able to perform prior work, benefits are denied.[14] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[8] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[9] *Id.* §§ 404.1520(c), 416.920(c).

[10] *Id.* §§ 404.1520(c), 416.920(c).

[11] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[12] *Id.* §§ 404.1520(d), 416.920(d).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

economy—in light of the claimant's RFC, age, education, and work experience.[15] If so, benefits are denied. If not, benefits are granted.[16]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[17] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[18]

## II. Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of December 16, 2014.[19] Her claim was denied initially and upon reconsideration.[20] An administrative telephonic hearing was held before Administrative Law Judge R.J. Payne.[21]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since the alleged onset date;

---

[15] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497–98 (9th Cir. 1984).

[16] 20 C.F.R. §§ 404.1520(g), 416.920(g).

[17] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[18] *Id.*

[19] AR 185-87 & 256-71.

[20] AR 174-82 & 190-202.

[21] AR 37-107.

- Step two: Plaintiff had the following medically determinable severe impairments: status-post ulnar nerve transposition bilaterally; obesity; history of psoriasis; bilateral hand arthritis, status-post trigger thumb release; bilateral knee arthritis; status-post left hip surgery; L5 sacralization; fibromyalgia; unspecified depressive disorder; and unspecified anxiety disorder with panic attacks;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to:

  > lift and carry 20 pounds occasionally and 10 pounds frequently, sit 6 hours, and stand and/or walk 2 hours total in any combination with normal breaks. She can occasionally stoop, crouch, kneel, crawl, balance, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to heavy industrial-type vibration, heat, cold, and humidity, and never work at unprotected heights and can occasionally be exposed to hazardous machinery. She can frequently handle, finger, and feel, as well as, frequently reach in all directions. She can have occasional contact with the general public and occasionally work with or in the vicinity of others, but in no teamwork type setting. She can occasionally handle normal supervision with no over the shoulder or confrontational supervision. She would do best in a routine work setting with little or no changes.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in

significant numbers in the national economy, such as toy stuffer, house sitter, and merchandise marker.[22]

When assessing the medical-opinion evidence, the ALJ gave:

- the greatest weight to the opinion of the testifying medical expert Eliza Pierko, M.D.; less weight to Norman Staley, M.D.'s reviewing opinion; and the least weight to James Opara, M.D.'s examining opinion; and

- great weight to the opinions of the testifying psychologist Michael Lace, Psy.D., and the consultative psychologist E. Andrea Shadrach, Psy.D.[23]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[22] AR 12-33.

[23] AR 23-25.

[24] AR 21-23.

[25] AR 1-6.

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV. Analysis

### A. Medical-Opinion Evidence: The ALJ erred in evaluating the medical-opinion evidence.

Plaintiff challenges the ALJ's assignment of less weight to the opinion of examining physician Dr. Opara, while giving more weight to the opinion of the testifying medical expert Dr. Pierko. As is discussed below, the Court finds the ALJ's weighing of the medical evidence was consequentially impacted by an erroneous factual finding.

The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a non-examining physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to the opinion of a non-treating

---

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

physician.[35] When a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.[36] The opinion of a nonexamining physician—such as Dr. Pierko—serves as substantial evidence if it is supported by other independent evidence in the record.[37]

Here, the ALJ assigned great weight to Dr. Pierko's opinion offered at the administrative hearing that Plaintiff could, amongst other limitations, stand/walk for four hours (although could be limited to two hours), sit for six hours of the day with normal breaks, and lift and carry twenty pounds occasionally and ten pounds frequently.[38] Whereas, the ALJ assigned less weight to Dr. Opara's August 2015 examination opinion that Plaintiff was limited to standing/walking up to two hours during the workday and limited to lifting ten pounds both occasionally and frequently.[39] The ALJ discounted Dr. Opara's opinion because 1) it was based in part on Dr. Opara's comment that a cane was medically necessary; 2) it was not as consistent with the longitudinal record as Dr. Pierko's opinion; and 3) it was not

---

[35] *Id.*

[36] *Id.*

[37] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[38] AR 24 & 53-61.

[39] AR 24 & 659.

consistent with Plaintiff's lack of strength deficits in the upper extremities during Dr. Opara's examination.

As to the ALJ's first reason for discounting Dr. Opara's opinion, the ALJ's finding that the "medical records did not show evidence of [a cane] ever being prescribed . . . or even recommended" is erroneous.[40] The first reference to a cane was in an August 2014 treatment note by PA-C Joseph Webb with Tri-City Orthopaedics, who wrote, "The gait is antalgic. Due to her recent hip surgery, [Plaintiff] is using a cane."[41] Then on December 2, 2014, PA-C Webb wrote in his treatment note relating to Plaintiff's knee pain, "I did give her a note indicating that she needs to be excused from work for 12/1/14 [due to increased discomfort that Plaintiff was experiencing due to knee pain]. I also gave her a note indicating that she may need to use a cane to aid in ambulation surgery."[42] The Court recognizes there appears to be a word missing between "ambulation" and "surgery" (likely "after"). Regardless, this recommendation by PA-C Webb, who, along with Dr. Owen Higgs, treated Plaintiff fairly regularly since 2012, is consistent with Dr. Higgs' notation in the January 5, 2015 treatment note: "[Plaintiff] is distraught today. She was fired from her job. According to her, she asked her boss if she could

---

[40] AR 24.

[41] AR 599.

[42] AR 633.

use a cane while working. He initially told her yes but then two weeks later she was laid off. She thinks that this is directly related."[43]

Furthermore, PA-C Webb's recommendation that Plaintiff use a cane to aid in ambulation is consistent with Plaintiff's subsequent use of a cane as noted in treatment records. *See* AR 494 (Jan. 7, 2015: "walks with a straight cane"); AR 779 (Jan. 29, 2015: "Walks with a cane due to knee pain"); AR 776 (Feb. 24, 2015: "Walks with a cane due to knee pain"); AR 772 (Feb. 26, 2015: "walking with a cane"); AR 770 (March 11, 2015: "Walks with a cane due to knee pain"); AR 768 (March 25, 2015: "Walks with a cane due to knee pain"); AR 763 (April 21, 2015: "Walks with a cane due to knee pain"); AR 699 (May 5, 2015: "walks with a straight cane"); AR 758 (May 5, 2015: "Walks with a cane due to knee pain"); AR 753 (June 11, 2015: "Walks with a cane due to knee pain"); AR 693 (June 29, 2015: "walks with a straight cane"); AR 654 (July 21, 2015: "The gait is antalgic. She walks with a cane."); AR 689 (July 27, 2015: "walks with a straight cane"); AR 657 (Aug. 1, 2015: "She ambulated into the exam room with a cane and has a duckling and antalgic gait. She was unable to walk or stand without the cane."); AR 683 (Aug. 24, 2015: "walks with a straight cane"); AR 838 (Sept. 18, 2015: "Ambulates with a cane"); AR 662 (Sept. 26, 2015: "She also had a walking cane for balance and keeping pressure off of her hips and knees. . . There was no evidence of feigning or factitious behaviors."); AR 1005 (Dec. 2, 2015: "Altered gait and station. Decreased

---

[43] AR 635.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 11

strength and tone. Ambulation with cane."); AR 848 (Dec. 10, 2015: "Ambulates slowly with a cane"); AR 858 (June 24, 2016: "Walks slowly with a cane. Son is at side to help patient."); AR 863 (July 26, 2016: "Ambulates with a cane"); AR 871 ("Uses a cane"); AR 882-83 (Dec. 30, 2016: "ambulates with a cane"); *see also* AR 829 (Sept. 10, 2015: "Slow to change positions"). There is no evidence that any of these providers believed that Plaintiff was feigning the need to use the cane to ambulate. In addition, PA-C Webb completed paperwork for Plaintiff to use a temporary disabled parking permit, as did Plaintiff's treating ARNP.[44]

The ALJ's failure to recognize that PA-C Webb recommended that Plaintiff use a cane impacted the ALJ's weighing of Dr. Opara's opinion and the medical evidence as a whole.[45] For instance, the ALJ stated, "One would expect to find evidence of [recommendation of the use of a cane] if a cane was deemed medically necessary. As such, the undersigned finds the medical expert [Dr. Pierko's] testimony persuasive and accords greater weight to her testimony than the cursory

---

[44] AR 652 (July 2015: two months); AR 849 (Dec. 2015: twelve months); AR 882-86 (Dec. 2016: twelve months).

[45] Although the applicable regulations considered a physician's assistant as an "other" medical source, the ALJ was still required to consider a physician's assistant's opinion, and related evidence, as to the severity of the claimant's impairments and how they affected the claimant's ability to work. 20 C.F.R. §§ 404.1513, 416.913.

mention of medical necessity by Dr. Opara."[46] On this record, this was not a rational interpretation of the evidence.[47] And the ALJ's erroneous factual finding was consequential as the ALJ crafted the RFC based more on Dr. Pierko's less restrictive standing/walking and carrying/lifting imitations, rather than Dr. Opara's more limiting restrictions.

Second, the ALJ discounted Dr. Opara's opinion because it was inconsistent with the longitudinal record.[48] While whether a medical opinion is consistent with the longitudinal record is a factor to consider,[49] here, the ALJ failed to cite to the medical records supporting his finding that Dr. Opara's opinion was not as consistent with the longitudinal record as Dr. Pierko's opinion.[50] Without the ALJ offering more than his stated conclusion, the Court is unable to meaningfully review whether the ALJ's interpretation of the evidence, rather than Dr. Opara's opinion, is legitimate and supported by substantial evidence, particularly given the ALJ's erroneous factual finding as to Plaintiff's use of a cane.[51] Moreover, the ALJ's need to articulate

---

[46] AR 24.

[47] *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

[48] AR 24.

[49] *See Lingenfelter*, 504 F.3d at 1042.

[50] AR 24.

[51] *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to

the basis for his finding that Dr. Opara's opinion is not supported by the longitudinal record is even more so here as Dr. Opara's examination revealed objective physical deficits supporting his opinion.[52] Although Dr. Opara found Plaintiff's knee, ankle, and cervical range of motion within normal limits, Dr. Opara found that Plaintiff had diminished range of motion in her hip joints and was unable to test Plaintiff's range of motion in her back because she was unable to stand and bend down on her own.[53] Dr. Opara observed that Plaintiff was "in obvious painful discomfort," "ambulated into the exam room with a cane," had a "duckling and antalgic gait," "was unable to walk or stand without the cane," "had a lot of problems climbing up and down the exam table," and "had some problems taking her shoes off and putting them back on."[54] In addition, Dr. Opara was unable to evaluate the strength of Plaintiff's lower extremities due to her bilateral hip pain.[55] In light of the physical deficits that Dr. Opara observed, and the ALJ's erroneous factual finding as to

---

meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[52] *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017).

[53] AR 657-58.

[54] AR 657.

[55] AR 658.

Plaintiff's use of a cane, the ALJ's finding that Dr. Opara's opinion is not as supported by the longitudinal record as Dr. Pierko's opinion is not a rational interpretation of the evidence.

Third, the ALJ discounted Dr. Opara's opinion that Plaintiff was limited to carrying and lifting ten pounds both occasionally and frequently—instead giving greater weight to Dr. Pierko's opinion that Plaintiff could lift twenty pounds occasionally and ten pounds frequently—because Plaintiff did not exhibit any strength deficits in her upper extremities during Dr. Opara's examination.[56] However, Dr. Opara's lifting and carrying restrictions were not based on any purported deficit in Plaintiff's upper extremity strength but rather because it would be "hard for her to carry or manipulate heavier objects" because of her severe tenderness and limited motion of both hips and the antalgic gait (for which she used a cane).[57] Therefore, that Plaintiff had full upper body strength was not a legitimate reason to discount Dr. Opara's lifting and carrying restrictions as it was not the basis for Dr. Opara's restrictions.[58] Moreover, Dr. Opara's lifting and

---

[56] AR 24, 53, & 658-59.

[57] AR 659.

[58] *See Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

carrying restrictions were consistent with those of reviewing physician Dr. Norman Staley.[59]

On this record, which contains an erroneous factual finding as to whether Plaintiff's use of a cane was recommended by a medical provider, the ALJ failed to offer legitimate reasons supported by substantial evidence for discounting Dr. Opara's opinion.

**B.     Step Three (Listings): The ALJ must take new testimony from a medical expert and reevaluate.**

Plaintiff argues the ALJ erred by failing to 1) conduct an adequate step-three analysis and 2) find that Plaintiff met Listings 1.02A and 14.09A. Listing 1.02A applies if one has a major peripheral weight-bearing joint resulting in the "inability to ambulate effectively."[60] Listing 14.09A applies if persistent inflammation or persistent deformity of one or more major peripheral weight-bearing joints results in the inability to ambulate effectively.[61] While the "inability to ambulate effectively" generally involves either the use of a walker or two canes—which is not present here—or the inability to walk a block at a reasonable pace on uneven surfaces, an ALJ must also consider whether a claimant's

---

[59] AR 153 & 168.

[60] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Rule 1.02A.

[61] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Rule 14.09A(1).

impairments constitute the medical equivalence of a listing.[62] Here, Dr. Pierko's testimony as to whether Plaintiff satisfied a listing was simply, "No, Your Honor, [Plaintiff's] conditions did not either singularly or in combination meet or equal any listings of impairments." I think exhibits you can turn to are those exhibits 1.02 and 1.04. The labrum joint function and the functional find."[63] Because both Dr. Pierko and the ALJ failed to appreciate that a medical provider had recommended that Plaintiff use a cane to ambulate, the ALJ on remand must reevaluate whether Plaintiff meets or equals a listing due to her ambulation difficulties. This includes receiving into evidence testimony from a medical examiner on the issue of listing equivalence.[64]

**C.     Plaintiff's Symptom Reports: The ALJ must reevaluate.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. The Court declines to address this argument because the analysis of this issue depends, in part, on the ALJ's evaluation of the medical-opinion evidence. When evaluating Plaintiff's symptom reports on remand, the ALJ is to consider the following. First, before the ALJ discounts Plaintiff's symptom reports on the grounds that she quit work for a reason not related to her alleged disability, the ALJ must consider Plaintiff's offered reason as to why her

---

[62] 20 C.F.R. Pt. 404, Subpt. P, App. 1, Rules 1.00B2(b) & 1.00H.4.

[63] AR 53.

[64] SSR 96-6p (eff. July 2, 1996, to March 27, 2017).

employment was terminated, i.e., that her employer pretextually terminated her when she began working with a cane—a cane that was recommended by a treating medical provider.[65] Second, the ALJ must consider the basis for Plaintiff's reported limitations and not discount her symptoms for nonrelevant normal findings.[66]

## D.    RFC and Step Five: The ALJ must reevaluate.

Plaintiff argues the ALJ erred at step five by relying on an incomplete hypothetical. Because the ALJ's RFC was based on an erroneous factual finding and weighing of the medical evidence, the ALJ on remand is to reassess Plaintiff's RFC and proceed with a new step-five analysis, if necessary.

---

[65] *See* AR 635 (Jan. 4, 2014: "She was fired from her job. According to her, she asked her boss if she could use a cane while working. He initially told her yes but then two weeks later she was laid off. She thinks that this is directly related."); AR 777 (Jan. 29, 2015: "She was recently fired from Fred Meyer for "giving out too many coupons," however she believes it was because she started using her cane at work and became a liability."); AR 663 (Sept. 2015: "I was a clerk in the home department . . . . I worked there for two years and was fired two weeks after I showed up at work with my cane.").

[66] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

### E. Remand for Further Proceedings

The ALJ consequentially erred by failing to provide legally sufficient reasons for discounting the opinion of Dr. Opara. Plaintiff submits that remand for payment of benefits is warranted because she does not have the ability to stand/walk for two hours in an eight-hour workday.[67] However, the vocational expert testified that a house sitter could stand, sit, and lay down with a great deal of latitude and that a merchandise marker could rotate positions at will between standing and sitting. Therefore, even if Dr. Opara's opinion (that Plaintiff is limited to standing/walking to less than two hours and to lifting ten pounds both frequently and occasionally) is given great weight, it is unclear whether Plaintiff is unable to work, or whether Plaintiff is capable of working as a house sitter or merchandise marker. Therefore, remand for further proceedings, rather than for an award of benefits, is necessary.[68]

On remand, the ALJ is to consider scheduling a consultative physical examination, reweigh the medical-opinion evidence (including new testimony from a medical expert as to Plaintiff's ability to ambulate and whether she meets or equals a listing), reevaluate Plaintiff's symptom reports, and, if necessary, complete the sequential analysis, including eliciting new testimony from a vocational expert.

---

[67] ECF No. 12 at 15 (citing SSR 83-10).

[68] *See Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017).

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office is directed to substitute Andrew M. Saul, the Commissioner of Social Security, as the Defendant.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED**.

3. The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

5. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this Order, provide copies to all counsel, and close the file.

**DATED** this 13th day of December 2019.

s/Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge